UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

GREGREY FETSCH,                                             6:11-cv-6343-TC

Plaintiff,

v.                                         OPINION AND ORDER

CITY OF ROSEBURG, et al.,

Defendants.

COFFIN, Magistrate Judge:

The Roseburg Police Department (RPD) hired plaintiff Gregrey Fetsch in 1992 as a patrol officer.  Plaintiff worked for the RPD for eighteen years, and was promoted to a final position of patrol sergeant, until he resigned in November 2010 following an internal investigation.

The internal investigation began in early October 2010 after a report that plaintiff may have engaged in an inappropriate personal relationship relating to his duties as a supervisor and as a representative of the RPD.[1]  Lieutenant Moore, who conducted the investigation, learned that

_____

[1]The RPD also investigated a second report against plaintiff, which was unrelated to the inappropriate personal relationship report.  This unrelated report was quickly determined to be

Page 1 - OPINION AND ORDER

plaintiff had confided in probationary RPD officer George Sheppard, who plaintiff supervised, that plaintiff was having an extramarital affair with a woman identified as Sarah Carpenter. Plaintiff asked Sheppard to keep the affair a secret. While off-duty and at a bar with Carpenter, plaintiff used his personal cell phone to exchange text messages with Sheppard–who was also off duty and using his personal cell phone–that discussed Carpenter, made sexual remarks and included a photo of plaintiff and Carpenter kissing with the caption "our secret."

Sheppard told at least one other probationary officer that plaintiff had confided in him about having an affair and showed the probationary officer the text messages and photo. When Moore interviewed Sheppard during the investigation, Sheppard agreed–after Moore "worked pretty hard" to convince him–to forward the text messages between himself and plaintiff to Moore. Sheppard told Moore that the texts were personal conversations and sent on personal phones. Moore also spoke with Carpenter during the investigation and, with participation from Captain Matthews, interviewed plaintiff twice.

At the beginning of the investigation, there was concern that plaintiff was having an affair with someone he supervised–plaintiff coordinated the RPD reserve officer program and Carpenter was rumored to be a reserve officer. At the end of the investigation in late October 2010, Moore concluded that plaintiff had never taught or supervised Carpenter in any capacity and the two began their affair only after Carpenter was not accepted into RPD's reserve officer program. Moore, however, found that plaintiff engaged in misconduct by telling Sheppard about his affair and asking him to keep it a secret and by not being candid and forthcoming with information during the internal investigation.

_____

unfounded and is not relevant to this action.

Based on Moore's findings and conclusions, RPD Chief Burge wrote plaintiff a Notice of Intent to Impose Discipline dated November 1, 2010 stating that Burge's review of the internal investigation led him to believe that plaintiff should be terminated. Burge found the most serious issues to be: (1) plaintiff's lack of candor, forthrightness and honesty during the internal investigation; and (2) his confiding in Sheppard that he was having an affair and asking him to keep it a secret, thereby creating an ethical dilemma for Sheppard and causing him to fear he might not pass his probationary period if he did not keep the secret. The Notice offered plaintiff the chance to meet with Burge with any information he wanted Burge to consider before making his decision. The notice did not, however, notify plaintiff of his right to appeal the termination decision to the City Manager.

On November 1, 2010, Captain Matthews met with plaintiff and told him that Burge had decided to terminate his employment. Matthews gave plaintiff a copy of the Notice of Intent to Impose discipline at the meeting. Between November 1 and November 3, 2010, plaintiff spoke with Matthews several times on the phone. During one conversation, Matthews told plaintiff that, if he resigned, RPD would not challenge plaintiff's Oregon Department of Public Safety Standards and Training (DPSST) certifications–which plaintiff needed to work as a police officer in Oregon. Plaintiff twice asked for additional time to consider this officer, including requesting a week to obtain legal counsel.

Plaintiff met with Burge and Matthews on November 3, 2010 for a pre-disciplinary hearing where he was not allowed to question witnesses and was not represented by counsel. After the hearing, Burge reviewed plaintiff's personnel file and decided to terminate him. As required by City policies, Burge sought and received authorization from City Manager Eric Swanson to terminate

plaintiff.  The next day, November 4, 2010, Burge told plaintiff he  had ninety minutes to decide whether to quit or be fired.  Plaintiff resigned that day.  As required by Oregon law, Burge reported plaintiff's separation from employment with RPD to DPSST through a personnel action report (F-4 Form), stating that plaintiff had resigned during an investigation.  On November 8, 2010, RPD received a letter from DPSST requesting a copy of the internal investigation report into plaintiff's conduct, which RPD was required to provide under Oregon law.  In March 2010, DPSST notified plaintiff that it was beginning proceedings to revoke his law enforcement certifications.  Over a year later, the DPSST Policy Committee met and voted not to revoke plaintiff's certifications.  This vote was not final until the full board ratified the decision on July 28, 2011.  Thus, between March 2010 and July 2011, the status of plaintiff's law enforcement certifications were uncertain.

During a patrol staff briefing within about two weeks of plaintiff's resignation, Burge made the statement about plaintiff: "if you sleep around and tell people about it, don't expect it to be private."  At the same staff meeting, a RPD officer said about plaintiff: "don't cheat on your wives and don't lie about it."  Burge's comment about sleeping around was publicized to at least one non-RPD employee.  About two months after plaintiff's termination, a RPD reserve academy instructor told plaintiff that Sheppard's brother Jeremy (who was a RPD reserve officer) told other reserve officers that plaintiff was fired for "sleeping with girls while on duty."  According to the instructor, Jeremy learned this information from his brother George Sheppard.  In January 2011, plaintiff interviewed with Allen Boice for a parole officer position with Douglas County Adult Parole and Probation.  After his interview, plaintiff learned that Burge had met with Boice before Boice interviewed plaintiff and that Boice had asked Burge about plaintiff.  Boice also had a blank F-4 Form during the interview and asked plaintiff about his DPSST certification status.

Page 4 - OPINION AND ORDER

Several months later, in June 2011, the News-Review of Douglas County made a public records request for a copy of the results of the internal investigation regarding plaintiff. After consulting with City of Roseburg's attorney, the City of Roseburg Human Resources Director John Van Winkle provided the News-Review with a copy of November 1, 2010 Notice of Intent to Impose Discipline. On July 28, 2011, the News-Review published an article discussing plaintiff's discipline which stated that plaintiff resigned during an investigation, texted details of his affair to a "rookie officer," and burdened the "rookie officer" with unwanted and unsolicited personal and sexual information. Along with detailing several of the findings and conclusions in the Notice of Intent to Impose Discipline, the article noted that Burge said that plaintiff's lack of candor, forthrightness and honesty in an internal investigation justified termination.

Plaintiff obtained counsel and between December 2010 and October 2011, his counsel and the City of Roseburg's attorney corresponded regarding plaintiff's request for a hearing under the City's policies and plaintiff's assertion that he was entitled to a hearing based on a property or liberty interest in his employment. Plaintiff's counsel also requested a name-clearing hearing after defendants' allegedly published stigmatizing statements about the reasons for plaintiff's termination. In a letter dated October 25, 2011, without conceding that he was entitled to one, the City offered him a name clearing hearing. Plaintiff, through counsel, declined the hearing on the grounds that it would not be meaningful as the City did not intend to reinstate him and he was unavailable because he had accepted a job in Afghanistan.

Plaintiff filed this action alleging that City of Roseburg, Chief Burge, former City manager Eric Swanson and George Sheppard violated federal and state law. The parties have consented to magistrate judge jurisdiction and defendants seek summary judgment on plaintiff's claims. I heard

Page 5 - OPINION AND ORDER

oral argument on defendants' motion on November 1, 2012, and for the reasons below, I grant the motion in part and deny it in part.

## Standard

A court may grant summary judgment when the record establishes that there is no "genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The movant bears the initial burden of showing that no genuine issue of material fact exists or that a material fact essential to the nonmovant's claim is missing. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). Once the movant has met its burden, the burden shifts to the nonmovant to produce specific evidence to establish a genuine issue of material fact or to establish the existence of all facts material to the claim. Id. In order to meet this burden, the nonmovant "may not rely merely on allegations or denials in its own pleading," but must instead "set out specific facts showing a genuine issue of fact for trial." Fed. R. Civ. P. 56(e).

Material facts which preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. Anderson, 477 U.S. at 248. Factual disputes are genuine if they "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. On the other hand, if, after the court has drawn all reasonable inferences in favor of the nonmovant, "the evidence is merely colorable, or is not significantly probative," summary judgment may be granted. Id.

## Discussion

### A.    Evidentiary Objections

Defendants object to some of plaintiff's exhibits. Plaintiff has withdrawn exhibits 10 and

12 and pages 2-5 of exhibit 25 but argues that I should overrule defendants' objections to exhibit 9,

page 6 of exhibit 25, and certain paragraphs of Keith Cordell's and plaintiff's declarations.

Exhibit 9 is rejection letters and emails from prospective employers to plaintiff. Defendants

argue that this exhibit is not relevant to the issues raised on summary judgment and that the letters

and emails are inadmissible hearsay. Plaintiff contends this exhibit is relevant to his due process

liberty interest and that the letters and emails are not hearsay because they are not offered to establish

the truth of the matter but instead offered to establish the number of jobs for which he applied and

the timing of his applications and rejections. I find that the number of jobs for which plaintiff

applied and the timing of his applications and rejections are not relevant to the issues raised in

defendants' motions. I give no weight to this exhibit.

Paragraphs 5, 7, 8 and 9 of Keith Cordell's declaration detail what his supervisor Allen Boice

told him about plaintiff's application for a position with Douglas County Adult Parole and Probation

and what Cordell understood about Boice's relationship with plaintiff based on what Boice told him.

Defendants object to Cordell's statements on hearsay grounds. Plaintiff, however, argues that

Cordell's statements are not hearsay because they are personal knowledge informed by Cordell's

position with Douglas County Parole and Probation. Self-Realization Church v. Ananda Church of

Self-Realization, 106 F.3d 1322, 1330 (9th Cir. 2000). Even if it were reasonable to assume that

Cordell had personal knowledge of plaintiff's interest in the agency and of his meeting with Boice

by virtue of his supervisory position in the agency, it is not reasonable to assume that, by virtue of

his position, Cordell could testify about what Boice told him or about his understanding of Boice's

impressions of plaintiff. Moreover, as noted above, neither plaintiff's application  nor the timing of

his application to Douglas County Adult Parole and Probation are relevant to the issues raised in this

Page 7 - OPINION AND ORDER

motion. Accordingly, I give no weight to paragraphs 5, 7, 8 and 9 of Cordell's declaration.

Paragraph 26 of plaintiff's declaration states that RPD reserve academy instructor Stever told him that George Sheppard's brother Jeremy told students that plaintiff was fired for "sleeping with girls while on duty." Defendants object on the grounds that this statement includes inadmissible hearsay within hearsay. Plaintiff, however, argues that the statement is offered for the non-hearsay purpose of establishing the timing of when plaintiff learned about the rumors surrounding his termination and that Stever heard the rumors. I find that the statement in paragraph 26 is inadmissible hearsay within hearsay and, even if it were offered for the non-hearsay purpose asserted by plaintiff, the timing issue is irrelevant to the issues raised in defendants' motion. I give no weight to paragraph 26 of plaintiff's declaration.

Finally, defendants object to page 6 of exhibit 25, which is Stever's deposition. In the relevant portion of this page, Stever states that she wanted plaintiff to know that her brother had told her that "[George Sheppard's brother] is telling other cadets...that the reason why you're being fired or let-go is for sleeping with other women while you're on the job." Plaintiff argues that he offers this testimony in support of his defamation claim against Sheppard for the non-hearsay purpose of establishing that Stever heard a false rumor about plaintiff's termination, that Stever told plaintiff about the rumor and the timing of the statements. I find that Stever's statements regarding the rumors is inadmissible, even if offered for the purpose of establishing that Stever heard a false rumor. It is clear from Stever's testimony that she did not hear the rumor first hand. Instead, her brother reported the rumor to her and she, in turn, told plaintiff. Accordingly, as plaintiff has withdrawn the other pages of exhibit 25, I give no weight to this exhibit.

## B.    Fourteenth Amendment Claim Against Burge, Swanson and the City

Page 8 - OPINION AND ORDER

The state cannot deprive a person of the freedom to engage in his chosen occupation without due process of law. Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 572-73 (1972). Accordingly, a terminated government employee (federal, state or local) has a Fourteenth Amendment Due Process Clause liberty interest in procedural due process protections, including a name-clearing hearing, when his employer publicly discloses stigmatizing information about the reasons for his termination. Id. at 573. To establish a liberty interest violation, a plaintiff must first show that: "(1) the accuracy of the charge is contested; (2) there is some public disclosure of the charge; and (3) the charge is made in connection with the termination of employment." Mustafa v. Clark County School Dist., 157 F.3d 1169, 1179 (9th Cir.1998) (citation omitted); Ulrich v. City and County of San Francisco, 308 F.3d 968, 982 (9th Cir. 2002). An employee's liberty interest is also involved if the employer publically discloses a disputed charge associated with his termination that impairs his reputation for honesty or morality. Braswell v. Shoreline Fire Dept., 622 F.3d 1099, 1103 (9th Cir. 2010).

Plaintiff alleges Burge, Swanson and the City of Roseburg violated his due process liberty interest by publicly disclosing the following stigmatizing statements about him in connection with his termination and not providing him a name-clearing hearing: (1) Burge's statements about plaintiff to Boice when plaintiff applied for a job with his agency and Burge's statements to the Douglas County Sheriff's Office before and at the time of plaintiff's termination; (2) Burge providing an allegedly inaccurate and deliberately misleading F-4 Form to DPSST; and (3) the City's release of the Notice of Intent to Impose Discipline to The News-Review in April 2011.[2] Defendants

---

[2]Defendants note that, in his response to discovery requests, plaintiff appeared to indicate that he was also entitled to a name-clearing hearing based on a statement made by George Sheppard between December 2010 and January 2011 that plaintiff was terminated for sleeping

concede for purposes of this motion only that plaintiff's resignation in lieu of termination was an involuntary resignation that could constitute a termination for purposes of his due process claim. Knappenberger v. City of Phoenix, 566 F.3d 940-41 (9th Cir. 2009). Defendants argue, however, that they are entitled to summary judgment on plaintiff's liberty claim because he cannot establish other essential elements of his claim.

### 1.    Burge's Statements to the Douglas County Sheriff's Department

Relying on deposition testimony from Douglas County Sheriff John Hanlin and Douglas County Sheriff's Department Administrative Assistant Angela Stoffal, plaintiff argues that a reasonable factfinder could conclude that Burge discussed the reasons for his termination with Hanlin, thus triggering the City's obligation to provide a name-clearing hearing. Defendants claim they are entitled to summary judgment on this claim because: (1) it is beyond the scope of the pleadings and (2) even if this allegation were properly plead, plaintiffs have failed to create a genuine issue of material fact regarding whether Burge made statements to Hanlin that would have triggered a name-clearing hearing. I agree.

Plaintiff's second amended complaint does not allege that any statement Burge made to Hanlin was one of the grounds for his liberty interest claim. Even assuming arguendo that the complaint implied such, this claim fails because plaintiff cannot raise an issue of material fact regarding whether Burge's statements to Hanlin would have triggered the City's obligation to provide a name-clearing hearing. In his deposition, Hanlin testified that Burge told him that plaintiff was on administrative leave and that there was an internal affairs investigation but did not disclose

_____

with women while on duty. (#30 at 11). In his response, plaintiff clarified that Sheppard's statements were not the basis of the public disclosure element of his liberty claim. (#37 at 17).

any specifics. (#43, Ex. 3 at 23:2-16).  At the time of his deposition, Hanlin believed that plaintiff resigned from RPD, and plaintiff himself told Hanlin that he had an affair with Carpenter and he was worried that RPD might investigate him.  (Id. at 14: 8-25; 15: 5-23; 16:2-10).  Self-publication of internal investigations or other charges to prospective employers does not constitute public disclosure. Llamas v. Butte Community College Dist., 238 F.3d 1123, 1130-31 (9th Cir.2001). Comments which may cause injury to reputation–such as statements that plaintiff was on administrative leave–are not alone sufficient to establish a deprivation of liberty interest protected by due process. Ulrich, 308 F.3d at 982.

Stoffal testified that she heard that plaintiff was having an affair from him and from other people at the Sheriff's department.  She further stated that she cannot remember how she heard about the way he was terminated and that no one at the RPD talked to hear about plaintiff's termination. (#38, ex. 23 at 2[3]; #43, ex. 4 at 12:5-13). Taking the evidence in a light most favorable to plaintiff, no reasonable juror could conclude that Burge made a stigmatizing statement about plaintiff to Hanlin that obligate the City to provide a name-clearing hearing. Ulrich, 308 F.3d at 982.

### 2.    Burge's Statements to Boice

Plaintiff argues that a reasonable jury could find that Burge's discussions with Boice triggered a right to a name-clearing hearing.  I find, however, that plaintiff has failed to establish a genuine issue of fact regarding this issue.  Boice testified at his deposition that, after hearing some conflicting information, he asked Burge if plaintiff resigned and Burge replied that plaintiff had resigned from RPD. (#38, ex. 3 at 3).  Boice also testified that when he interviewed plaintiff he had

---

[3]The pagination of plaintiff's exhibits refers to the exhibit page number at the bottom right of the page, not the deposition page number at the top right.

a blank Personnel Action Report (F-4 Form), that he asked plaintiff during the interview whether he would retain his DPSST certification and that plaintiff replied he would. (Id. at 4-5). Burge testified that, when asked by Boice if he could tell Boice anything about plaintiff, Burge replied that plaintiff was "a good guy" and "other than that there wasn't much I could talk to him about." (#38, ex. 4 at 16). Taken in a light most favorable to plaintiff, this evidence does not create an issue of fact regarding whether Burge publically disclosed the accusations against plaintiff, triggering an obligation to provide a name-clearing hearing.

### 3.    DPSST Disclosure

Plaintiff argues that the RPD's submission of the Personnel Action Report (Form F-4) to DPSST triggered his right to a name-clearing hearing because the form was inaccurate and deliberately misleading because Burge checked the box that plaintiff "resigned during investigation." Plaintiff asserts that the investigation ended on October 28, 2010, several days before plaintiff resigned under coercion, that Burge could have picked other options such as "resignation" or "resignation in lieu of termination" on the form, and that the misleading form stigmatized plaintiff and altered his job status. Plaintiff points out that, under Oregon law, an F-4 Form is not exempt from public disclosure because it is not a record relating to a personnel disciplinary action. Thus, he argues that releasing the F-4 Form to DPSST constitutes a public disclosure.

Swanson argues he is entitled to summary judgment on this claim because he was not involved in the preparation and submission of the Form. I agree that Swanson is entitled to summary judgment as plaintiff has not linked him to the alleged deprivation. Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir.1982) (Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient).

Page 12 - OPINION AND ORDER

Burge argues that he is entitled to summary judgment on this claim because plaintiff's argument is "nothing more than semantics." According to Burge, he marked "resigned during investigation" because plaintiff resigned by the deadline Burge gave him to resign. In Burge's mind, the investigation was still open when plaintiff resigned and, further, marking "resigned during investigation" instead of "resigned in lieu of termination" was more favorable towards plaintiff. Although plaintiff may believe that "resigned in lieu of termination" was more desirable and the "resigned during investigation" designation caused injured his reputation, such injury alone is not sufficient to trigger due process requirements. Ulrich, 308 F.3d at 982. The evidence here is not sufficient to show that the "resigned during investigation" designation met the "stigma plus" test set forth in Ulrich. Paul v. Davis, 424 U.S. 693, 701, 711 (1976) (injury to reputation alone is not sufficient to establish a deprivation of a liberty interest protected by the Constitution).

Even assuming arguendo that plaintiff had set forth sufficient facts demonstrating that the information released on the F-4 Form was stigmatizing, Burge would be qualified to qualified immunity on this claim. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In determining whether qualified immunity shields a government official from qualified immunity, a court need only consider whether the official's conduct violated clearly established statutory or constitutional rights of which reasonable person would have known. Pearson v. Callahan, 555 U.S. 223, 236 (2009). Oregon Administrative Rules required Burge to report the resignation of public safety personnel to DPSST on an F-4 Form within ten days of the action. OAR 259-008-0020(2). Given this requirement, a reasonable person would not have understood that sending the required

Page 13 - OPINION AND ORDER

form constituted publication triggering a name-clearing hearing.  Accordingly, I grant summary

judgment on this claim against Burge.

The finding of immunity regarding Burge does not evaporate an underlying constitutional

violation; it merely does not permit an action against individuals despite the violation. Thus, given

the case law that municipal entities qualify for neither absolute or qualified immunity, plaintiff's

claim against the City may still stand if he has otherwise pled a municipal liability section 1983

claim. Bateson v. Geisse, 857 F.2d 1300, 1304 (9th Cir.1988) citing Owens v. City of Independence,

445 U.S. 622, 657 (1979).  A municipality may only be liable if the entity itself acted illegally. To

establish municipal liability, a plaintiff must show that (1) he possessed a constitutional right of

which he was deprived; (2) the municipality has a policy; (3) the policy amounts to a deliberate

indifference to plaintiff's constitutional rights; and (4) the policy is the moving force behind the

constitutional violation. Mabe v. San Bernadino County Dep't of Pub. Soc. Servs., 237 F.3d 1101,

1111 (9th Cir.2001).

A plaintiff may demonstrate the existence or a policy or custom of a municipality in one of

three ways: (1) by showing "a longstanding practice or custom which constitutes the 'standard

operating procedure' of the local government entity;" (2) "by showing that the decision-making

official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly

be said to represent official policy in the area of decision;" or (3) "by showing that an official with

final policymaking authority either delegated that authority to, or ratified the decision of, a

subordinate." Ulrich, 308 F .3d at 984-85 (citations omitted).

I find that plaintiff cannot establish that a City poliy or custom led to the disclosure of the

F-4 information to DPSST.  Although as Chief of RPD, Burge is arguably an official with final

Page 14 - OPINION AND ORDER

policy making authority, here he did not decide to send the F-4 to DPSST. Instead, he was obligated

to do so under Oregon's Administrative Rules. OAR 259-008-0020(2). Accordingly, the disclosure

by transmittal to the DPSST cannot be shown to stem from a City policy or custom.

### 4.    Release of the Notice of Intent to Impose Discipline to the News-Review

Plaintiff argues that defendants are liable for publicly disclosing stigmatizing information

about him when they released the Notice of Intent to Impose Discipline to the newspaper.

Defendants concede that the statement released to the paper was a stigmatizing statement, but argue

that they are nonetheless entitled to summary judgment on this claim.

Defendants first assert that the release did not trigger a liberty interest protected by due

process because it was not in the "course of termination" as it occurred seven months after plaintiff

resigned.  As plaintiff notes, the Ninth Circuit has declined to adopt a bright-line rule that

"defamatory statements made by an employer anytime after the date of termination are not made in

the course of termination." Campanelli v. Bockrath, 100 F.3d 1476, 1480 (1980); see also Ulrich,

308 F.3d at 968 (the "in connection with termination of employment" element of a liberty interest

claim "does not require a strict temporal link."). Instead, the Circuit has concluded that statements

need only be "so closely related to the discharge from employment that the discharge itself may

become stigmatizing in the public eye." Campanelli, 100 F.3d at 1480.

Martez v. Incorporated Village of Valley Stream, the Second Circuit case upon which

defendants rely in arguing that the release of information seven months after plaintiff's resignation

is too long to be considered in the course of termination, is easily distinguished from this case.

Martez, 22 F.3d 26, 32 (2nd Cir. 1994). Specifically, the Martez court noted that the employer's

statements to a newspaper that "Martz's purported malpractice had just recently come to his attention

Page 15 - OPINION AND ORDER

indicate that it could not have been a factor in the decision not to re-appoint her. Therefore, because Martz has failed to demonstrate that she was deprived of an interest protected by the Fourteenth Amendment, the district court properly dismissed this claim." Id. at 32. Here, it is clear that Burge's findings that plaintiff was not candid, forthright and honest during an internal investigation was the driving factor in the termination of his employment. In short, a reasonable jury could conclude that the release of information to the News-Review–even seven months after plaintiff's resignation–was so closely related to plaintiff's discharge to "become stigmatizing in the public eye."

Defendants next assert that Burge and Swanson are entitled to summary judgment because plaintiff does not link them to the alleged constitutional deprivation. As noted above, vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient to establish a claim. Ivey, 673 F.2d at 268. Plaintiff does not set forth any evidence establishing that either Burge or Swanson was connected to the decision to release the Notice of Intent to Impose Discipline to the paper. Accordingly, summary judgment with regard to the claims against them is appropriate.

Finally, defendants argue that the City is entitled to summary judgment because there is no evidence that a municipal policy or custom caused the alleged violation of plaintiff's liberty interest. A plaintiff may demonstrate the existence or a policy or custom of a municipality by showing "by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision." Ulrich, 308 F .3d at 984-85 (citations omitted). Here, the evidence shows that the City of Roseburg Director of Human Resources made the decision to release information to the newspaper afer consulting with the City's legal counsel. Defendants asserted during the hearing on this motion that

Page 16 - OPINION AND ORDER

just because the HR director had the authority to release this information does not mean that he had policy making authority, but I find this argument unpersuasive. I find that the evidence set forth by plaintiff is sufficient to raise fact questions as to whether the HR director was a final policy making authority whose actions may fairly be said to represent the City's official policy.

### 5.    Right to a Name-Clearing Hearing

Here, the evidence shows that the only procedural due process afforded plaintiff was a pre-disciplinary hearing with Burge–on November 3, 2010, several months before the release of information to the News-Review–where plaintiff was not allowed to call witnesses and was not represented by counsel. Accordingly, I find that plaintiff has established a genuine issue of fact regarding whether the City of Roseburg violated his liberty interest by releasing stigmatizing information about his internal investigation to the News-Review without providing him with due process protections–including a name-clearing hearing.

While the evidence does not establish a link between the denial of due process procedures and defendants Swanson and Burge, it does create fact questions as to whether the City, through its HR director, was violated plaintiff's liberty interest by failing to provide him a name-clearing hearing after the release of information about his termination to the News-Review.

### C.    Fourth Amendment Claim against Burge and Swanson

Plaintiff assert that defendants Burge and Swanson violated his right to be free from unlawful search and seizure when they searched Sheppard's phone and viewed text messages plaintiff sent Sheppard. Defendants argue they are entitled to summary judgment because: (1) Sheppard consented to the search; (2) plaintiff had no reasonable expectation of privacy in the text messages he sent to another phone. I agree.

The evidence establishes that the only cell phone searched during the internal investigation was Sheppard's, which contained texts messages and photos from plaintiff. Plaintiff's contention that the search of Sheppard's cell phone was unreasonable fails. The Supreme Court has held that Fourth Amendment rights are personal rights which may not be vicariously asserted by a third party. Brown v. United States, 411 U.S. 223, 230 (1973).

To the extent that plaintiff argues that he has any expectation of privacy in text messages he sent to a third party, this claim also fails. When plaintiff transmitted messages and photos to a device–Sheppard's cell phone–over which he had no control, he voluntarily ran the risk that his messages and photos, once delivered, would be viewed by whomever had access to Sheppard's phone. Plaintiff had no control what Sheppard–or anyone with access to Sheppard's cell phone–would do with the messages and photos. Although plaintiff cites cases finding that employees had various privacy interests with regard to an employer searching through data on employer provided data devices, he cites no cases, and this court knows of none, showing that he has any expectation of privacy in text messages displayed on a third party's cell phone.

I grant summary judgment on plaintiff's Fourth Amendment claim.

## D.    Defamation Claim Against Sheppard

Plaintiff brings a state law defamation claim against defendant Sheppard stemming from Sheppard's allegedly defamatory statements about plaintiff to Sheppard's brother Jeremy. Defendants argue that this court lacks subject matter jurisdiction over plaintiff's state law defamation claim. I agree.

Federal courts are courts of limited jurisdiction and only have jurisdiction over state law claims to the extent that such claims are "related to claims in the action within such original

jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A state law claim is part of the same case or controversy within the meaning of 28 U.S.C. § 1367 when it shares a common nucleus of operative fact with a federal claim and the state and federal claim would normally be tried together. Bahrampour v. Lampert, 356 F.3d 969, 978 (9th Cir. 2004).

Although plaintiff's section 1983 claims and his defamation claim may arise from a common originating point–his then-workplace, this does not mean that there is a factual connection between the two claims. Plaintiff's defamation claim stems from Sheppard's alleged comments to his brother in January 2011 and his brother repeating the statement to cadets at RPD's reserve academy. In contrast, his section 1983 claims are the denial of a name clearing hearing and the review of text messages between Sheppard and plaintiff. In short, there is no common nucleus tying the federal and state claims together–none of the facts supporting the federal claims are relevant to the state claim, and I find that this court lacks subject matter jurisdiction over plaintiff's state law defamation claim.

## Conclusion

I deny defendants' motion (#29) with respect to plaintiff's Fourteenth Amendment claim against the City of Roseburg stemming from the release of the Notice of Intent to Impose Discipline to the News-Review. I grant summary judgment with respect to plaintiff's other Fourteenth Amendment claims and with respect to his Fourth Amendment claim and dismiss these claims with prejudice. I find that this court lacks subject matter jurisdiction to consider plaintiff's state law defamation claim and dismiss this claim.

As this case is proceeding against the City on plaintiff's remaining Fourteenth Amendment claim, the Clerk shall set a scheduling conference to set dates for the pretrial conference and trial.

Page 19 - OPINION AND ORDER

The Clerk is directed to enter judgment in accordance with this order.

IT IS SO ORDERED

DATED this _31_ day of December 2012.

THOMAS M. COFFIN
United States Magistrate Judge