UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| GREGREY FETSCH | Case No: 6:11-CV-6343-TC |
| Plaintiff, | |
| vs. | ORDER |
| CITY OF ROSEBURG, acting by and through the Roseburg Police Department. | |
| Defendant. | |

COFFIN, Magistrate Judge:

Plaintiff Gregrey Fetsch alleges that the City of Roseburg violated his Fourteenth Amendment right to due process when the City's Human Resources Director, John Van Winkle, publically disclosed a Notice of Intent to Impose Discipline that contained false and stigmatizing information about plaintiff to a local newspaper without offering him a name-clearing hearing. The City argues that plaintiff cannot establish municipal liability because plaintiff cannot establish that the public disclosure without a name-clearing hearing was pursuant to an official City policy, practice or custom. (#69 at 6-7). Whether an official has final policy making authority is a question for the court to decide based on state law. Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989). After hearing evidence in the jury trial on this action, including testimony from Van Winkle and then-City Manager Eric Swanson, I find as a matter of law that Van Winkle had final

1– ORDER

policy making authority with regard to publicly disclosing the Notice of Intent to Impose Discipline without offering a name-clearing hearing.

Under section 1983, a City is liable for a constitutional violation only if the claimed constitutional violation was the result of an official municipal policy, custom or practice. Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). One of the ways to meet the policy, practice or custom requirement for municipal liability under section 1983 is for the plaintiff to establish that the individual who committed the constitutional violation was an official with "final policy-making authority" and the challenged action itself thus constituted an on act of official government policy. Hopper v. City of Pasco, 241 F.3d 1067, 1083 (9th Cir. 2001); see also Monell, 436 U.S. at 694. (stating in order to be liable, the defendant must act as a "lawmaker or…[one] whose edicts may fairly be said to represent official policy.") (emphasis added). State law determines whether a particular official has final policy-making authority. Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir. 1992). The Supreme Court has recognized that "authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority…." Pembaur v. Cincinnati, 475 U.S. 469, 481-83 (1986); see also Mayo v. City and Cnty of San Francisco, 211 F.3d 1274, 2000 WL 234467 (9th Cir. Feb. 28 2000) (noting that although the parties failed to flesh out the chain of authority in any detail, the evidence shows that the Medical Director of the Jail was a final policy maker with respect to medical decisions at the jail).

The City offers the Roseburg City Charter to establish that the Charter vests the City Manager with the final policy making authority with regard to offering a name-clearing hearing. Supreme Court and Ninth Circuit case law, however, recognizes that

2– ORDER

the City Charter does not conclusively determine who was the final policy maker regarding the decision to publically release the information about plaintiff without a name-clearing hearing. Instead, other evidence also informs whether an individual was a final policy maker. The evidence offered at trial (and at the dispositive motion stage) reveals that the City denied plaintiff's request to obtain legal counsel before deciding whether to resign instead of being terminated.[1] After he separated from employment, plaintiff retained counsel. Shortly after being retained, in December 2010, counsel sent a letter to the City requesting a hearing under City policy 1.3 which referenced due process. The City's lawyer, Akin Blitz, did not respond to plaintiff's counsel's request until March 2011. When Blitz responded, he denied plaintiff's request for a hearing. According to Van Winkle's testimony at trial, plaintiff's requests for a hearing were between plaintiff's counsel, Blitz and possibly City Manager Eric Swanson and did not involve Van Winkle.[2]

While plaintiff's counsel and Blitz continued to communicate about plaintiff's request for a hearing, Van Winkle received a public records request from the Douglas County News-Review for a copy of the Notice of Intent to Impose Discipline regarding plaintiff. Van Winkle testified, in response to questions from the court outside the presence of the jury, that, when he forwarded the Intent to Impose Discipline to the News-Review after consulting with Blitz, he did not feel any need to consult with anybody else at the City about releasing the information, including ether Swanson or the

---

[1] Plaintiff resigned under threat of termination. The parties have stipulated that this constitutes a termination.

[2] The exhibits of the communications between plaintiff's counsel and Blitz introduced at trial show that Van Winkle was cc'd on Blitz's letters to plaintiff's counsel regarding the request for a name clearing hearing. Van Winkle testified that he did not specifically recall seeing the communication.

3– ORDER

City Council. In summary, Van Winkle felt comfortable making the decision—after consulting with Blitz—without any input from any other city employee, Given this evidence, I conclude that Van Winkle was a decision maker with the final authority to make the decision regarding releasing the notice of discipline to the News-Review. Pembaur, 475 U.S. at 481-83.

The City appears to argue that whether Van Winkle was a policy maker in terms of releasing the discipline notice is not important and that the material issue is whether Van Winkle had the final authority to deny plaintiff's request for a name-clearing hearing. Even assuming this is the material issues, I find that a decision maker who possessed final authority to establish municipal policy with respect to denying the name-clearing hearing made the decision to release the information without a hearing. The evidence establishes that Blitz was in contact with plaintiff's counsel regarding a hearing for plaintiff and that Van Winkle consulted with Blitz prior to releasing the information to the News-Review. There is no evidence that neither Blitz nor Van Winkle felt the need to consult with Swanson, or any other City employee before releasing this information.

## Conclusion

I find as a matter of law that Van Winkle was a policy maker in terms of releasing the discipline notice without offering plaintiff a name-clearing hearing.

IT IS SO ORDERED.

Dated: February 28, 2013

Thomas M. Coffin
United States Magistrate Judge

4– ORDER